JULIO E. DÁVILA, demandante y recurrente, *v.* INTERNATIONAL PARKING CO., demandada y recurrida.

*Número:* R-64-20          *Resuelto:* 5 de noviembre de 1964

204

*César J. Dones Magaz,* abogado del recurrente; *Francisco Ponsa Feliú,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

De acuerdo con las conclusiones de hechos probados de la ilustrada Sala sentenciadora: "El 11 de marzo de 1962 el demandante estacionó su automóvil Chevrolet . . . en el parque de estacionamiento de la demandada en el Aeropuerto Internacional situando dicho automóvil en lugar por el demandante seleccionado en el área de estacionamiento y subiendo los cristales y cerrando puertas y baúl con llave la que se llevó en el bolsillo dirigiéndose al edificio del aero-

puerto a esperar su suegro que regresaba de los Estados Unidos; (2) que el demandante no hizo entrega de su automóvil a la demandada sino que obtuvo un boleto autorizándosele a estacionar su carro en el área de estacionamiento y cuyo boleto tiene escrito entre otras cosas lo siguiente: 'Ud. paga por el derecho a estacionar su carro en esta área. Su carro recibirá nuestra atención adecuada. No somos responsables por artículos dejados dentro del carro. Si estaciona su carro por un día o más vea al empleado para instrucciones'; que al cabo de un corto rato regresó el demandante y no encontró el automóvil que había estacionado momentos antes en su sitio; que se dirigió al encargado de la demandada en la oficina de ésta informándosele que no tenían conocimiento de quién se había llevado el carro; que el demandante tenía en el baúl de su automóvil bajo llave los artículos que aparecen descritos en el hecho quinto de su demanda y de los cuales no informó [nada] en la oficina de la demandada; que el demandante tenía asegurado su carro contra robo del mismo y la compañía aseguradora le satisfizo el valor de dicho automóvil que luego apareció destrozado y sin ninguno de los artículos que tenía en el baúl por haber sido también forzado dicho baúl."

En sus conclusiones de derecho, la ilustrada Sala sentenciadora considera los siguientes factores como suficientes para determinar la falta de responsabilidad de la recurrida; (1) "Que la demandada en el negocio que explota únicamente provee a los clientes local para [el] estacionamiento de sus automóviles mientras acuden al aeropuerto mediante el pago de una pequeña cantidad de dinero sin recibir directamente a su cargo dichos automóviles o propiedad dejada en los mismos; (2) Que la demandada al entregar el boleto de admisión al parque de estacionamiento advierte en dicho boleto que no es responsable de artículos dejados dentro del carro y que solamente dará atención adecuada a los carros allí estacionados; (3) que habiendo mantenido el demandante

control directo sobre su automóvil estacionándolo en el sitio que le satisfizo y cerrándolo con llave totalmente la demandada no podía tener control de dicho automóvil ni de los objetos en el mismo por no haberle sido entregados personalmente a sus empleados ni los objetos ni el automóvil; (4) que nunca el demandante realizó o contrató el depósito de su automóvil y los objetos que tenía en el mismo con la demandada ya que mantuvo la llave en su poder que le permitía controlar el movimiento de dicho carro y de los objetos que alega en el mismo tenía."

1—El primer fundamento de derecho establecido para negar la responsabilidad, basado en el hecho, que la recurrida sólo provee a los clientes un local para el estacionamiento de sus automóviles sin recibir directamente a su cargo dichos automóviles o propiedad dejada en los mismos, parece partir del supuesto que el arrendatario o usuario en este caso puede escoger libremente entre el local que ofrece la recurrida y otros locales de estacionamiento que ofrecen los competidores de la recurrida y entonces la voluntad contractual, aunque sea en la forma reducida que suele manifestarse en un caso como éste, funciona como un acto libre de la voluntad, sin coerción o encasillado administrativo. En dicho supuesto, nuestra opinión en el caso de *Rivera* v. *San Juan Racing Assoc., Inc.*, 90 D.P.R. 414 (Blanco Lugo) (1964) cita precisa a la pág. 420 contiene una variada exposición de las distintas modalidades contractuales que pueden producirse en el contrato de aparcar. No empece, en el caso de *Rivera* no estudiamos el supuesto de una concesión exclusiva.

El problema que presentan las concesiones exclusivas, aunque se relacionen con una forma mínima del instituto contractual, es que el elemento de la voluntad está restringido porque el arrendatario del solar, el usuario del sitio o el depositante voluntario, no puede ejercer su autonomía jurídica para escoger entre unas condiciones u otras. Como cuestión de realidad, en ausencia de una prolija reglamentación

gubernativa, las condiciones que deben cumplir los concesionarios exclusivos son aquellas inherentes a un orden jurídico capaz de armonizar el interés público con el interés privado. Como ejemplo de este interés de armonizar los efectos beneficiosos de la concesión exclusiva o la reglamentación administrativa del negocio ordinario con el interés privado, se puede citar la Ley Núm. 107 de 27 de junio de 1964 para autorizar al Administrador de Estabilización Económica para que reglamente determinados aspectos del negocio de solares y locales para el estacionamiento público de vehículos de motor, cuya Sec. 2 dispone: "El ámbito de las facultades que por la presente se confieren se entenderá que cubre, pero sin que ello constituya una limitación . . . la exigencia de normas mínimas de seguridad y conveniencia personal para los clientes, visitantes y empleados, y la prestación de las debidas garantías, mediante seguro o en cualquier otra forma adecuada, para el resarcimiento de los daños y perjuicios que puedan sufrir las personas que concurran a tales negocios de estacionamiento público de vehículos de motor, incluyendo los daños sufridos por sus vehículos. Nada de lo aquí dispuesto se entenderá en el sentido de dar facultad al Administrador de Estabilización Económica para imponer por reglamento, o en cualquier otra forma, una responsabilidad civil en daños y perjuicios a los operadores de solares y locales dedicados al estacionamiento público de vehículos de motor, en adición a, o en exceso de la responsabilidad que a tales efectos les impongan las leyes de Puerto Rico." De todos modos, dentro de la teoría pura del Derecho, en el caso de las concesiones exclusivas, queda abierto como un tema novedoso, la de incluir la posesión forzada que produce la concesión exclusiva como una modalidad del depósito necesario, con un implícito desplazamiento de la posesión, por estar el hecho de la custodia del vehículo estacionado más sujeto a la voluntad del concesionario exclusivo que a la voluntad del arrendatario, usuario o depositario.

■ Independientemente de su situación teórica dentro de la ciencia del Derecho, si el contrato de aparcar se realiza entre un concesionario exclusivo y el dueño de un vehículo de motor, como entre los deberes implícitos de la concesión que no pueden ser mejorados por la competencia, están la vigilancia o custodia y la conservación de la cosa, el mero estacionamiento del vehículo dentro de la propiedad comprendida en la concesión exclusiva hace responsable al concesionario exclusivo por la destrucción, depreciación o uso indebido del vehículo de motor, objeto del contrato, hasta el montante del valor de dicho vehículo al momento de la entrega. El elemento ritual de la entrega, signo característico del contrato típico del depósito, no es el factor jurídico que decide la responsabilidad en otras formas atípicas del instituto contractual en que se saben sobreentendidas las relaciones y diligencias de un contrato de custodia.

■ 2–4 Hay, sin embargo, una limitación en la causa de pedir, que merece especial estudio. Como el automóvil estaba asegurado contra destrucción, depreciación o cualquiera otra pérdida indebida, por otra póliza independiente mantenida por el doctor Dávila, queda el caso reducido a determinar la responsabilidad de la compañía que opera el área de estacionamiento por ciertos bienes muebles guardados en el baúl del automóvil hurtado. Las conclusiones de hecho de la ilustrada Sala sentenciadora se refieren a la descripción de dichos bienes en la alegación 5 de la demanda, resultando ser: un portafolio conteniendo documentos personales con un valor de $50.00; una máquina de cauterizar valorada en $80.00; un maletín conteniendo instrumentos quirúrgicos valorados en $500.00 y una máquina de afeitar eléctrica valorada en $20.00, todo para un total de $650.00. Es un hecho satisfactoriamente probado que el doctor Dávila no le informó a ningún empleado de la demandada recurrida que el baúl del automóvil contenía dichos bienes muebles, y

por lo tanto, no se le dio ninguna oportunidad a la demandada recurrida de inspeccionarlos y de tomar las medidas correspondientes a su mejor protección. De haberse así hecho, nos encontraríamos ante un caso típico de depósito necesario—véase, por ejemplo, el Art. 1683 del Código Civil de Puerto Rico (1930)—31 L.P.R.A. sec. 4693 (pág. 1046). Es indudable que cuando se trata de bienes que están comprendidos dentro del equipo normal de un vehículo de motor, tales como gomas de repuesto, instrumentos mecánicos para reparaciones, etc., aunque no estén a la vista pero que por experiencia y observación ordinaria se sabe que forman parte de la operación del vehículo de motor, no existe obligación alguna de parte del dueño del automóvil de informar al dueño del parque de estacionamiento sobre dichos bienes para que se encuentren comprendidos dentro de la protección debida al automóvil, habiendo responsabilidad por su destrucción, desaparición o uso indebido; sí existe obligación de parte del dueño del vehículo que se intenta estacionar de informar al dueño o al empleado del dueño del parque de estacionamiento sobre la cantidad, la calidad y el valor de los objetos especiales contenidos dentro del automóvil para que dichos objetos puedan ser custodiados en una forma distinta. De no hacerse así, no hay responsabilidad por parte del dueño del parque de estacionamiento de resarcir los daños por hurto, uso indebido o incumplimiento del contrato de aparcar en cuanto tales objetos especiales.

Si bien es verdad, como nos advierte Puig Peña, estudiando una situación análoga en el contrato de hospedaje, que puede obtenerse por pacto entre las partes una limitación de responsabilidad, la doctrina entiende, justificadamente, que cualquier declaración unilateral del dueño del sitio limitando su responsabilidad, violaría los principios generales que determinan tal responsabildad dentro del Derecho Civil y no tendría efecto ni validez alguna: IV-II Puig Peña—*Tratado de Derecho Civil Español*—424 (ed. 1951).

*Por las razones expuestas se confirma la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, de fecha 5 de diciembre de 1963.*