SALVADOR COLLAZO CARTAGENA, demandante y apelante, *v.* HON. RAFAEL HERNÁNDEZ COLÓN, GOBERNADOR DE PUERTO RICO, SR. JOSÉ D. CASTRO GONZÁLEZ, ALCALDE MUNICIPIO DE JAYUYA, demandados y apelados.

*Número:* O-74-477     *Resuelto:* 22 de mayo de 1975

*José Ramón Pérez Hernández,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 15 de diciembre de 1970 el apelante fue nombrado Director Local de la Defensa Civil en Jayuya, Puerto Rico. En 17 de junio de 1971, el Alcalde de dicho municipio, mediante carta, creyendo que tenía facultad para ello, le concedió "permanencia" en el cargo. En 12 de marzo de 1973 el Alcalde lo suspendió de empleo y sueldo por treinta días, mediante carta de esa fecha. El día 22 de dicho mes y año el Gobernador de Puerto Rico, Honorable Rafael Hernández Colón, mediante carta lo destituyó, efectivo el 31 de marzo de 1973.

Ante nos la posición del apelante es la siguiente: (1) que él era un empleado municipal permanente y que a tenor con lo dispuesto en el Art. 93 de la Ley Municipal era necesario formularle cargos y probárselos en una vista pública, lo cual no ocurrió; y (2) que fue despedido por motivaciones políticas en violación de la Constitución de Puerto Rico.

Atenderemos las dos cuestiones arriba mencionadas en el mismo orden en que las hemos expuesto.

La Oficina de Defensa Civil, adscrita a la Oficina del Gobernador de Puerto Rico, fue creada para atender situaciones de emergencia, tales como huracanes, terremotos, inunda-

ciones y ataques por un enemigo al país. La ley mediante la cual se creó dicha Oficina de Defensa Civil dispone que el Director de Defensa Civil, sujeto a la dirección y control del Gobernador, será el Jefe Ejecutivo de la Oficina de Defensa Civil y será responsable al Gobernador. 25 L.P.R.A. sec. 133 (d). Dispone también dicha ley que el Gobernador "tendrá la dirección general y control de la Oficina de Defensa Civil Estadual *y la de todos los municipios.*" (Bastardillas nuestras.) 25 L.P.R.A. sec. 135. En la sección citada y en la que le sigue se relacionan los amplios poderes conferidos por ley al Gobernador sobre esta materia, los cuales guardan proporción con los desastres posibles o potenciales para atender los cuales se creó la Oficina de Defensa Civil. También dispone la ley que al Gobernador "se le confiere la facultad de hacer los cambios de personal que estime necesarios, *en cualquier organización local.*" (Bastardillas nuestras.) 25 L.P.R.A. sec. 137 (b). Al decir la ley "organización local" se refiere a la agencia local de defensa civil. 25 L.P.R.A. sec. 137 (a).

■ Para un mayor entendimiento de la Ley de Defensa Civil, de sus propósitos y del funcionamiento de dicha organización, creemos útil transcribir lo dicho en *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982, 990–992 (1972):

"[L]a Ley de Defensa Civil de Puerto Rico, Ley Núm. 183 del 1ro. de mayo de 1951, 25 L.P.R.A. secs. 130 y siguientes . . . creó la Oficina de Defensa Civil Estadual, adscrita a la Oficina del Gobernador, con el propósito de asegurar la protección del orden, la salud y bienestar general en caso de desastres causados por la naturaleza o por fuerzas enemigas. Se trata de un organismo público diseñado para atender situaciones de emergencia y a tales fines se le otorgan poderes adecuados. La ley promueve la eficacia de este organismo mediante la centralización de poderes en la persona del Gobernador de Puerto Rico. A éste compete la dirección general y el control de la Oficina de Defensa Civil Estadual y la de todos los municipios. A él se le confiere la facultad de asumir, cuando lo estime necesario o conveniente, el control directo de todas o parte de las operaciones y

funciones de la defensa civil. Art. 6 de la Ley de Defensa Civil, *supra,* 25 L.P.R.A. sec. 135.

Tal es la importancia del elemento de centralización en la estructura administrativa de la Defensa Civil, que aun cuando el Director Local de Defensa Civil es nombrado por el Alcalde con el consentimiento de la asamblea municipal, éste queda sujeto a la dirección y control del Gobernador. Más todavía, la ley confiere específicamente al Gobernador *'la facultad de hacer los cambios de personal que estime necesario, en cualquier organización local.'* Art. 8, 25 L.P.R.A. sec. 137.

Los desastres de cualquier índole—sean ya causados por la naturaleza o por fuerzas enemigas—generalmente crean desconcierto y trastornos en la vida de la comunidad. Producen un estado de emergencia que requiere acción rápida y coordinada. Tal acción se logra con mayor eficacia cuando la línea de autoridad es clara y centralizada. Es por eso que la Ley de Defensa Civil confiere todos los poderes al Gobernador, incluyendo el hacer los cambios de personal que estime necesario en cualquier organización local. El ejercicio de esta facultad por los alcaldes de los 76 municipios de Puerto Rico daría margen a conflictos de criterio que entorpecerían la acción rápida y coordinada en casos de graves emergencias dando al traste con los propósitos de la Ley de Defensa Civil.

Como hemos visto, la facultad de hacer los cambios de personal corresponde al Gobernador de Puerto Rico y no a los alcaldes."

■■■ En vista de las antes mencionadas disposiciones de la Ley de Defensa Civil de Puerto Rico es claro que los alcaldes no tienen facultad para dar permanencia a funcionarios y empleados de la Defensa Civil, porque la ley concede expresamente al Gobernador la facultad de hacer los cambios de personal que estime conveniente hacer en dicha organización. Además, el personal de la Defensa Civil no está sujeto a las disposiciones de la Ley de Personal, lo cual coloca a dicho personal en el servicio exento. Ley de Defensa Civil, Art. 4, 25 L.P.R.A. sec. 133(b) *in fine.*

Las anteriores disposiciones de ley antes citadas son consustanciales con la naturaleza de la organización denominada

Defensa Civil, naturaleza que ya antes hemos descrito. La Defensa Civil, como el Ejército y la Policía, son cuerpos creados para atender situaciones anormales y de emergencia. En dichas situaciones, el sentido común y la experiencia demuestran que se necesita el mando unificado, un alto grado de disciplina y la ejecución rápida de las órdenes.

La insistencia del apelante en el Art. 93 de la Ley Municipal hace necesario, o por lo menos conveniente, que señalemos cuestión tan fundamental como la jerarquía o prelación de las fuentes del derecho. Sin entrar en consideraciones filosóficas, por ser innecesario a los fines de resolver este caso, sobre si la fuente primaria del derecho fue la revelación divina, o la razón del hombre como ente pensante, o si el derecho es un subproducto del proceso histórico-social, para los fines prácticos de su aplicación la jerarquía de las fuentes del derecho legislado puertorriqueño son las siguientes: (1) la Constitución de Puerto Rico; (2) las leyes aprobadas por la Asamblea Legislativa; (3) las reglas y reglamentos aprobados y promulgados bajo autoridad de ley por los organismos públicos; y (4) las ordenanzas municipales. Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos, según dispone el Art. 7 del Código Civil, 31 L.P.R.A. sec. 7. La jurisprudencia interpreta y aplica la ley a los casos concretos, llena las lagunas cuando las hay y, en lo posible, armoniza las disposiciones de ley que estén o que parezcan estar en conflicto. *Márquez* v. *Tribunal Superior*, 85 D.P.R. 559, 564 *in fine* (1962) ; *United Hotels of P.R.* v. *Willig*, 89 D.P.R. 188, 196 (1963) ; *Vda. de Ruiz* v. *Registrador*, 93 D.P.R. 934, 943 (1967) ; *Robles Ostolaza* v. *U.P.R.*, 96 D.P.R. 583, 585 (1968) ; *Pueblo* v. *Batista Maldonado*, 100 D.P.R. 936, 939 *in fine* (1972) ; *Flores* v.

*Meyers Bros. of P.R., Inc.*, 101 D.P.R. 689, 692 (1973).([1])

▮ En adición a lo anterior, la Ley de Defensa Civil es una ley especial para regir una determinada organización y sus disposiciones prevalecen sobre aquellas de la Ley Municipal, la cual es una ley de carácter más general. *Rosario v. Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 764 *in fine* (1968). Las disposiciones antes citadas sobre control y cambio de personal en la Defensa Civil prevalecen, en lo que a esa organización se refiere, sobre el Art. 93 de la Ley Municipal. Además de esta razón metodológica, la razón básica y sustantiva para que esto sea así es la naturaleza de cuerpo de emergencia de la Defensa Civil, cosa que hemos antes mencionado.

En cuanto al segundo planteamiento tampoco tiene razón el apelante. La propia Sala de instancia, Hon. José Rivera Barreras, Juez, concluyó que la suspensión fue decretada "como medida disciplinaria."

Véanse las siguientes contestaciones dadas por el Alcalde apelado a un interrogatorio héchole por el apelante. Mediante el interrogatorio núm. 11 se le pregunta si después de él (el Alcalde) tomar posesión de su cargo tuvo algún incidente con el apelante. Contestación: "Varios incidentes ocasionados por su forma y manera del señor Collazo Cartagena desempeñar sus funciones." En el interrogatorio núm. 13 se le pide que admita si el 29 de enero de 1973 se comunicó con el apelante. Contestación: "Se admite. Ausencia del trabajo sin notificar dónde localizarlo en caso de emergencia." En el interrogatorio

---

([1]) Sobre teorías de las fuentes del derecho puede verse: Castán, *Derecho Civil Español, Común y Foral*, Tomo I, Vol. 1, 9na. ed. (1955), pág. 274; Del Vecchio, *Filosofía del Derecho*, 7ma. ed. revisada por Legaz Lacambra, Ed. Bosch (1960) pág. 339 y ss.; Recasens Siches, *Vida Humana, Sociedad y Derecho*, 2da. ed. (1945), Cap. X; Puig Peña, *Tratado de Derecho Civil Español*, Tomo 1, Vol. 1 (1957), pág. 242 y ss.; Espín, *Manual de Derecho Civil Español*, Vol. 1, 3ra. ed. (1968), págs. 92–123; Gray, *The Nature and Sources of the Law*, 2da. ed., Parte II; Bodenheimer, *Jurisprudence: The Philosophy and Method of the Law*, Harv. U. Press (1962), Cap. XV; Pound, *Jurisprudence* (1959) Tomo III, Cap. 16; Paton, *Jurisprudence*, 4ta. ed., Oxford U. Press (1972), Cap. VI.

núm. 25 se le pregunta que por qué razón suspendió de empleo y sueldo al apelante. Contestación: "Por indisciplina, abandono de sus deberes e ineficiencia."

En el interrogatorio núm. 7 que el apelante hizo al Gobernador de Puerto Rico, le preguntó que por qué razón lo destituyó. Contestación: "Actos de insubordinación e incumplimiento de los deberes del cargo ocupado."

Según la tarea judicial es de los jueces, la tarea de administrar es de los administradores. Unos y otros somos servidores públicos y servimos al país, al bien común. Unos y otros tenemos el deber de actuar dentro del marco que la Constitución y las leyes delimitan. Las funciones de ambos deben ejercerse, si bien con rectitud e integridad también, en lo que sea compatible con lo anterior, en forma civil. *Civiliter* decían los antiguos. La intervención de una rama de gobierno con la otra es la excepción y siempre por los canales que la Constitución y las leyes autorizan y por razones de peso y de la más genuina y alta naturaleza pública.

*En vista de lo anterior, se confirmará la sentencia apelada.*

