ANILDA L. QUIÑONES NÚÑEZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN SEXTA, recurrido.

*Número:* O-75-148          *Resuelto:* 30 de septiembre de 1975

*Martín Almodóvar Acevedo,* abogado de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El 10 de febrero de 1972 el notario Martín Almodóvar Acevedo autorizó una escritura de compraventa mediante la cual los esposos Julio Galiñanes Logan y Marina Vollmer de Galiñanes vendieron a Anilda L. Quiñones Núñez un inmueble sito en Guaynabo. Dicha escritura fue inscrita en el Registro de la Propiedad con el defecto subsanable de no haberse expresado en ella el estado civil de la compradora.

En 17 de noviembre de 1973 doña Anilda otorgó una escritura ante dicho notario para subsanar el defecto mencionado. En la escritura, titulada de Subsanación de Defectos, la otorgante expresó que:

"A fin de que se subsane dicho defecto la compareciente aclara que al adquirir por compra el inmueble descrito, la compareciente era soltera, nunca se había casado, ni se ha casado y así se lo hizo constar al Notario."

En la misma Escritura de Subsanación el notario certifica que por inadvertencia no hizo constar en la escritura original de compraventa el estado civil de la compradora, aunque ésta en efecto se lo había informado. Expresa que le había informado que era soltera, que nunca se había casado y que era soltera al momento de otorgar la escritura.

El Registrador se negó a subsanar el defecto por entender que el defecto de no haberse expresado el estado civil de la compradora no podía subsanarse mediante una escritura de subsanación o mediante acta notarial, sino que solamente podía hacerse mediante un procedimiento judicial ad perpétuam.

Contra dicha nota denegatoria el notario interpuso el presente recurso gubernativo, a nombre propio y en representación de la compradora. Compareció también ante nos el Registrador mediante su alegato.

En los méritos del recurso, el señor Registrador recurrido toma la posición de que el Art. 388-D de la Ley Hipotecaria, 30 L.P.R.A. sec. 706, requiere siempre la intervención judicial para subsanar defectos como el que aquí discutimos, el cual consiste en no haberse expresado el estado civil de la compradora. Cita además en apoyo de su posición los casos de *Olivencia* v. *Registrador*, 64 D.P.R. 144 (1944); *Vilella* v. *Registrador*, 64 D.P.R. 424 (1945); *Santaliz* v. *Registrador*, 71 D.P.R. 84 (1950) y al comentarista Morell. Tenemos ante nos la ley, la cita precisa de Morell y también los casos citados. La nota recurrida debe revocarse. Nos explicamos a continuación.

■ Desde luego, es a la propia ley el texto al cual hay que acudir en primer lugar.(¹) El citado Art. 388-D de la Ley Hipotecaria, 30 L.P.R.A. sec. 706, el cual trata de la cancelación de defectos subsanables, dispone, en lo pertinente, que cualquier persona que tenga inscritos inmuebles o derechos reales, en cuyas inscripciones se hayan consignado defectos subsanables, con motivo de los cuales no estuviese pendiente un pleito, *y que por cualquier razón no pudiesen subsanarse* o fuesen de difícil subsanación, después de transcurridos *10 años* a contar desde la fecha en que fue consignado el defecto, si el mismo se refiere a la capacidad legal o al estado civil de las partes, *podrá* comparecer por medio de una petición escrita ante el Tribunal Superior solicitando la cancelación del defecto.

Como puede verse, en el caso de autos el defecto subsanable no es de imposible subsanación, sino que es posible.

---

(¹) *Collazo Cartagena* v. *Hernández Colón*, 103 D.P.R. 870 (1975); *Flores* v. *Meyers Bros. of P.R., Inc.*, 101 D.P.R. 689, 692–694.

Tampoco dicha subsanación es difícil y no transcurrieron 10 años desde que se consignó el defecto hasta que se solicitó su subsanación.

Nótese también que dicho Art. 388-D no dice que la única forma de corregir un defecto subsanable es mediante la intervención judicial, sino que expresa que en las circunstancias allí descritas, de las cuales hemos hecho una síntesis, la persona interesada podrá comparecer al tribunal. Como veremos más adelante, ésa no es la única forma de corregir un defecto subsanable de la naturaleza del que nos ocupa.

Debemos ahora dirigirnos a los casos citados por el señor Registrador. En *Olivencia*, supra, la nota recurrida no fue sostenida, sino que por el contrario fue revocada. Allí el defecto consistió en que no se acreditó que Josefa San ,Miguel era la esposa de Gregory Llorens cuando éste adquirió el inmueble. Se presentó una instancia acompañada de la certificación del matrimonio de dichas personas. El Registrador no aceptó dichos documentos y expresó que eran los tribunales los únicos llamados a entender en la subsanación del defecto relativo al estado civil de Gregory Llorens.

Consistente con lo que antes señalamos, en el sentido de que el Art. 388-D expresa las circunstancias en que debe recurrirse a los tribunales, en *Olivencia*, supra, dijimos:

"Es para aquellos casos en los cuales, por cualquier razón, no pudiesen subsanarse o fuesen ,de ,difícil subsanación que se hace indispensable la intervención judicial. Por ejemplo, si se hubieren destruido o perdido los records del registro demográfico donde constaba inscrito el matrimonio es obvio que habría que obtener la prueba secundaria de ese hecho a través de una orden judicial."

En *Vilella*, supra, la situación de hechos era distinta a la presente. Allá el recurrente compareció con su esposa al otorgamiento de una escritura de compraventa de dos fincas

haciendo constar que cuando las compró, hacía 6 años, era soltero. De esa circunstancia pueden apreciarse las posibles complicaciones que allí podían darse. Dicha situación sí cae dentro de los casos problemáticos que contempla el Art. 388-D. Se trató de subsanar el error mediante un acta aclaratoria que transcribía la certificación del matrimonio de Vilella con Francisca Casanova celebrado el 30 de marzo de 1936. Desde luego, dicha certificación no destruía la posibilidad de que cuando se celebró la compraventa en el 1933 Vilella hubiese estado casado con otra persona.

En *Santaliz*, supra, también la situación de hechos era distinta a la del caso de autos. Al no expresarse el estado civil del comprador de un inmueble y para subsanar ese defecto Santaliz presentó un certificado de matrimonio del año 1941. En la escritura se exponía que los vendedores le habían vendido la finca a Santaliz en el 1930. Obviamente el certificado del matrimonio de 1941 solamente probaba que Santaliz y Juana Forestier se casaron en dicho año, pero no probaba que en el 1930 Santaliz era soltero, casado o viudo. A tales efectos Santaliz presentó un afidávit de una hermana suya y su propia declaración jurada. Ante lo incierto de la situación, confirmamos la nota recurrida pero volvimos a insistir, en que el Art. 388-D de la Ley Hipotecaria, "no excluye los demás medios que siempre se han usado para corregir defectos como el envuelto en aquel caso."

Debemos ahora examinar la cita del comentarista Morell en que aparentemente descansa el Registrador recurrido. Su cita precisa es *Comentarios a la Legislación Hipotecaria*, Tomo II, Ed. 1927, pág. 154. Allí Morell no dice que en el caso de omitirse el estado civil de un otorgante es indispensable la información ad perpétuam. En dicha cita al tratar sobre diferencias entre el título y el Registro, Morell expresa que cuando existe *contradicción* en los nombres o entre el nombre y la firma el único medio verdaderamente legal es la información ad perpétuam. Es fácil entender esa posición

pues si existe dicha contradicción se plantea una importante cuestión de hecho que puede dar margen a subsiguientes litigios y la cual debe aclararse previamente a la inscripción mediante la información ad perpétuam.

Sin embargo, la situación varía, como hemos estado sosteniendo, cuando se trata de un defecto subsanable de fácil constatación y subsanación. El propio Morell, un poco más adelante, al tratar de las faltas subsanables y de la omisión de circunstancias necesarias para la inscripción, expresa que "No dar fé el Notario del conocimiento de los otorgantes, ni especialmente, ni en general, de todo lo contenido en el instrumento" es una falta subsanable y que "puede subsanarse este defecto por medio de acta, según la Real orden de 13 de junio de 1883 y el art. 266 del Reglamento Notarial, si realmente fue una omisión, y el Notario conocía a los otorgantes." (²)

Citando a Galindo y Escosura, Morell señala que las faltas subsanables han de enmendarse, bien adicionando el documento, bien haciendo constar por medio de otro la circunstancia aquella cuya omisión ha sido causa de que el Registrador haya suspendido la inscripción.

■ En efecto, dice Morell, como expresan los citados escritores, cuando el defecto se refiere a circunstancias accidentales de la forma extrínseca, es evidente que al omitirse alguna de ellas puede enmendarse sin que sea preciso extender un título nuevo completo, sino uno limitado a la circunstancia que se echa de menos, "como ocurre en el caso de omitirse algún lindero, o la finca de que se segrega la que se trasmite, o la edad o el *estado civil* si estas circunstancias influyen en la capacidad." Obra citada, Tomo III (1928), pág. 266 (Bastardillas nuestras).

También Roca Sastre al tratar de la subsanación de defectos, menciona "los varios medios subsanatorios" y entre

---

(²) Obra citada, Tomo III (1928), pág. 247.

ellos incluye el de "otorgar escritura de rectificación." V. de dicho autor *Derecho Hipotecario*, Tomo II, Ed. 1948, pág. 40, y en la sexta edición (1968) pág. 291. A tenor con el derecho anteriormente reseñado eso exactamente fue lo que hizo la recurrente Quiñones Núñez: otorgar escritura de rectificación.

No es necesario que discutamos el planteamiento del Registrador en el sentido de que el notario no tiene capacidad jurídica para comparecer ante nos en este recurso, debido a que además de comparecer por sí también compareció en representación profesional de la parte interesada, Anilda L. Quiñones Núñez. Nuestra jurisprudencia interpretativa de la Ley Hipotecaria parece así sostenerlo, pero es conveniente recordar que la vigente Ley Hipotecaria Española y su Reglamento, los cuales son posteriores a nuestra Ley, al tratar del recurso gubernativo disponen que éste puede ser entablado por el notario autorizante del título, en todo caso. Art. 112, *Reglamento para la Ejecución de la Ley Hipotecaria de España.*

La explicación para esta disposición del Reglamento Hipotecario Español que autoriza al notario a establecer a nombre propio el recurso gubernativo es de fácil inteligencia. Cuando el Registrador suspende o deniega la inscripción de un título es porque estima que éste adolece de faltas. Si el título es un instrumento público, la calificación del Registrador envuelve, aunque sea implícitamente, una especie de censura para el notario autorizante, cosa que inevitablemente ha de ser de interés personal y profesional para el notario. También puede afectar su prestigio profesional. Si el notario no está conforme con la calificación recaída se produce una divergencia entre Registrador y Notario, y como, aunque no es probable, es posible que la calificación del Registrador sea equivocada o improcedente, parece justificada la disposición

moderna española de permitir al notario recurrir contra la calificación Registral. (³).

Vázquez Bote opina que el Art. 113 del Reglamento Hipotecario, 30 L.P.R.A. sec. 993, excluye a los Notarios de los interesados autorizados por el Art. 66 de la Ley Hipotecaria, para interponer recursos gubernativos, pero admite como excepción el caso de que la suspensión o denegación de la inscripción se funde en defectos del instrumento, en cuya hipótesis sí estará el Notario directamente interesado, admitiéndose entonces su legitimación procesal activa. (⁴)

En vista de lo anterior, *se revocará la nota recurrida y se ordenará la inscripción del documento.*

---

(³) Roca Sastre es de este mismo parecer. Obra citada, Tomo II, 6ta. Ed. (1968), pág. 297.

(⁴) *Elementos de Derecho Hipotecario Puertorriqueño* (1973), pág. 333.