Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La controversia que plantea este caso es si la póliza de responsabilidad pública que expidió la apelada National Insurance Company a favor de la Liga Superior de Baloncesto y del Municipio de Bayamón, cubre la pérdida del automóvil de un aficionado el cual le hurtaron del aparcamiento de la cancha, luego de pagar por estacionarlo allí mientras asistía a un partido de baloncesto. El Tribunal de Primera Instancia, Sala Superior de Bayamón, resolvió que dicha pérdida estaba excluida de la póliza. *1143 Confirmamos.
I
El Municipio de Bayamón es dueño del Coliseo Rubén Rodríguez y se lo arrendó a la Liga Superior de Baloncesto de Puerto Rico para que ésta celebrara allí los partidos locales del torneo de baloncesto en los que participara el equipo Vaqueros de Bayamón. National Insurance Company expidió a favor de la Liga Superior una póliza de responsabilidad comercial general que incluye toda el área interior del Coliseo Rubén Rodríguez así como su estacionamiento. La póliza contiene una cláusula de indemnización (hold harmless) a favor del Municipio de Bayamón.
La póliza en cuestión cubre los perjuicios corporales así como los daños a la propiedad que puedan sufrir las personas que utilicen esas facilidades deportivas o su estacionamiento. Sin embargo, no se extiende, de acuerdo con sus propios términos, a "propiedad bajo el cuidado, custodia o control del asegurado". Apéndice del alegato de la apelada, Anejo I, pág. 3 de la póliza. A los fines de esta apelación, no está en controversia que el automóvil de los apelantes fue hurtado mientras estaba estacionado en el aparcamiento del Coliseo, luego de su conductor haber pagado un dólar por estacionarse.
La reclamación del caso de autos se rige por la Ley para Regular el Negocio de Areas para el Estacionamiento Público de Vehículos de Motor, Ley Núm. 120 de 7 de junio de 1973, 23 L.P.R.A. see. 805 et seq. La misma se aplica a las áreas de estacionamiento público con ánimo directo de lucro las cuales se definen como "cualquier local, solar o área que se utilice por cualquier persona [operador] para permitir que en el mismo se estacionen vehículos de motor mediante el pago de alguna cantidad de dinero". Art. 2, inciso (d), 23 L.P.R.A. see. 806. A los fines de esta ley, "el término operador significa cualquier persona que opere un área de estacionamiento público, bien sea en calidad de dueño, representante del dueño, arrendatario o poseedor" e incluye a los gobiernos municipales. Id., incisos (c) y (e). 
La ley requiere, además, que todo operador de dichas áreas mantenga un seguro de responsabilidad pública por lesiones personales y por daños a la propiedad ajena. Art. 5 de la ley, see. 809. En lo que concierne al estándar de responsabilidad por la pérdida de un automóvil aparcado en un área de estacionamiento público, el mismo estatuto señala que "para propósito de la adjudicación de los daños y perjuicios se entenderá que el operario ha actuado como depositario del vehículo del usuario". Art. 8 de la ley, 23 L.P.R.A. see. 812. Dicho de otro modo, un automóvil aparcado en un área de estacionamiento público con ánimo directo de lucro se presume que ha sido entregado y puesto bajo el cuidado y el control del operador de dicho estacionamiento. Por lo tanto, una póliza que excluya de su cubierta los daños sufridos por propiedad bajo el "cuidado, custodia o control del asegurado", impide que se le pueda imponer responsabilidad a la aseguradora que la emitió, por el hurto de un vehículo de motor del cual el asegurado quedó como su depositario.
Es cierto, según hemos dicho, que la ley requiere que todo operador de áreas de estacionamiento público mantenga un seguro de responsabilidad pública por lesiones personales y por daños a la propiedad de los usuarios. En la industria de los seguros este tipo de póliza se conoce como "garagekeeper". Pero si el operador de un área de estacionamiento público no cumpliere con su obligación de mantener tal póliza, un tribunal no puede imponerle responsabilidad a cualquier compañía de seguros que hubiere expedido alguna póliza a dicho operador para cubrir otros tipos de riesgos no relacionados con la custodia, protección y vigilancia de los automóviles allí estacionados. A un operador que deje de obtener el seguro de responsabilidad pública que la ley exige, podrá cancelársele la licencia para operar su negocio, podrá ser multado administrativamente o podrá ser procesado por un delito menos grave. Arts. 7, 13 y 17 de la ley, 23 L.P.R.A. secs. 811, 817 y 821. Además, subsistirá siempre la propia responsabilidad del operador frente a los usuarios.
Pero el contrato de seguros es la ley entre las partes, Jové v. La Compañía de Seguros "The Palatine", 5 D.P.R. 55 (1903); no es un contrato ajeno a las normas básicas del derecho de obligaciones. Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 349 (1984). Y aunque es un típico contrato por adhesión, que obliga a interpretarlo liberalmente á favor del asegurado, no requiere que toda controversia sobre el ámbito de cubierta de la póliza se resuelva en contra de la aseguradora. Torres v. E.L.A., _ D.P.R. _ (1992), 92 J.T.S. 68. Una persona que reclame por una pérdida sufrida por un acto presumiblemente negligente del asegurado tiene que demostrar que su *1144 reclamación está comprendida en el ámbito de cubierta de la póliza. Si la cláusula a interpretarse es clara y exenta de ambigüedad, al punto de que de su mera lectura surge la inexistencia de cubierta, entonces debemos resolver inexorablemente a favor de la aseguradora. Casanova v. P.R. Amer. Ins. Co., 117 D.P.R. 689 (1977). Eso fue lo que hizo el tribunal de primera instancia y eso es justamente lo que hacemos nosotros ahora.
En resumen, el hecho de que el Municipio de Bayamón, como dueño, o la Liga Superior, como arrendataria, estuviesen operando un área de estacionamiento público aledaño al Coliseo Rubén Rodríguez para el cual estaban obligados a obtener de antemano un seguro de responsabilidad pública, no tiene la consecuencia de convertir cualquier tipo de póliza de responsabilidad pública en la póliza que requiere el Art. 5 de la ley. Si bien la cubierta que provee la póliza expedida por National Insurance Company es para responder por los daños y perjuicios que sufran los usuarios del coliseo y su estacionamiento, el ámbito de su cubierta se rige por el contrato de seguro otorgado entre la compañía aseguradora y él o los asegurados. Dicho contrato excluye de su cubierta los daños a los vehículos bajo la custodia, control o vigilancia de los asegurados; es decir, los automóviles que fueron allí estacionados mediante el pago de la tarifa de un dólar como es el caso de los demandantes.
Con estos antecedentes, se confirma la sentencia apelada. 
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 75
1. La ley no aplica a las áreas de estacionamiento público con "ánimo indirecto de lucro" que son aquellos lugares en los que el aparcamiento es gratis, Flores v. Meyers Bros. of P.R. Inc., 101 D.P.R. 689, 698 (1973); es decir, áreas de estacionamiento abiertas al público para ser utilizadas principal y esencialmente "para conveniencia de los clientes, parroquianos, o personas relacionadas con algún negocio o actividad que se lleve a cabo en dicha área de estacionamiento". Art. 14 de la ley, 23 L.P.R.A. see. 818. Véase, además, Acevedo v. Plaza Las Antéricas, Inc., 109 D.P.R. 311 (1980). A los operadores de estas áreas con ánimo indirecto de lucro, la misma ley le requiere, no obstante, que mantengan un seguro de responsabilidad pública por lesiones personales y por daños a la propiedad ajena. Id.
2. No nos pronunciamos sobre la cuestión de si el Tribunal de Primera Instancia tiene jurisdicción para adjudicar la reclamación por los daños del vehículo. Esta controversia no estuvo planteada ante nosotros. Pero, véase, Aguilú Delgado v. P.R. Parking System, 122 D.P.R. 261 (1988).