# 2009 DTA 76

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**

CARMEN O. GARCÍA CORTÉS
Recurrida

v.

COOPERATIVA DE ESTACIONAMIENTO EMPLEADOS PÚBLICOS
Recurrente

Núm. KLRA-2008-01054

San Juan, Puerto Rico, a 11 de mayo de 2009

Panel integrado por su Presidente, el Juez Escribano Medina, y
los Jueces Miranda De Hostos y Aponte Hernández

Escribano Medina, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos la Cooperativa de Estacionamiento de Empleados Públicos del Centro Gubernamental de Mayagüez, para solicitar que revoquemos una resolución emitida por Departamento de Asuntos del Consumidor, el 31 de julio de 2008. Mediante ésta, se ordenó a la parte querellada-recurrente reembolsar y/o indemnizar dentro del término de 20 días a la parte querellante-recurrida la cantidad total de $1,274.46 por concepto de daños ocasionados al vehículo ($950) e ingresos dejados de devengar y gastos incurridos $324.46), y a abonar el interés legal correspondiente desde la fecha de notificación de la resolución.

### I

El 2 de agosto de 2007, la señora Carmen O. García Cortés dejó su auto estacionado en el estacionamiento de la Cooperativa de Estacionamiento de Empleados Públicos del Centro Gubernamental de Mayagüez (en adelante, la Cooperativa) con quien posee un contrato para el uso del espacio de aparcamiento número 72 mediante el pago de $32.10 mensuales, incluyendo los impuestos. Cuando la señora García fue a recoger su auto a eso de la 1:20p. m., se percató que le faltaban dos tapabocinas marca Nissan del lado del pasajero y que le habían raspado la puerta trasera del mismo lado. En ese momento, se encontraba en el área del estacionamiento, el señor Ángel Suárez Montalvo, presidente de la Junta de la Cooperativa y Administrador del referido estacionamiento, por lo que la recurrida procedió a informarle lo sucedido. Luego de observar el vehículo, el señor Suárez le recomendó que radicara una querella en la Policía e hiciera una reclamación en la caseta del estacionamiento. La señora

García procedió según las instrucciones de Suárez, no obstante, en la caseta le indicaron que no tenían disponibles los formularios de reclamación. Posteriormente, la recurrida visitó en seis ocasiones las facilidades de la parte recurrente para tratar de conseguir los referidos documentos, pero todos los intentos fueron infructuosos.

Debido a ello, la señora García acudió nuevamente donde el señor Suárez quien le indicó que reclamara a la compañía de seguro, la Cooperativa de Seguros Múltiples. Así efectivamente lo hizo, el 13 de agosto de 2007. No obstante, la referida compañía le denegó la reclamación en dos ocasiones a la recurrida bajo el fundamento de que la Cooperativa no era responsable de los daños ocasionados a su vehículo y que en nada dicha compañía contribuyó a los mismos. Posteriormente, se le recomendó visitar al hojalatero de confianza de la Junta de Directores de la Cooperativa, lo cual efectivamente hizo la recurrida. Finalmente, la compañía aseguradora le denegó su reclamación.

Así las cosas, el 8 de noviembre de 2007, la señora García presentó una querella ante el D.A.Co. contra la Cooperativa, en la que solicitó una indemnización por los daños ocasionados a su vehículo y el pago del costo de los dos tapabocinas hurtados. Posteriormente, la querella fue enmendada a los efectos de incluir la reclamación del pago de los dos días en que la querellante tuvo que ausentarse de su trabajo para poder cumplir con el trámite de la reclamación. Además, solicitó el reembolso de los gastos de gasolina, alimentos, llamadas telefónicas y cualquier otro gasto incurrido por motivo de ésta.

El 1 de febrero de 2008, el vehículo de la querellante-recurrida fue inspeccionado por el Técnico Automotriz del D.A.C.O., el señor Edgar Cotto González. Del informe de inspección surge que la recomendación del técnico para corregir el vehículo fue "comprar dos tapa tuercas, pintar las puertas y blendiar el panel y guardalodos derecho". Página 52 del apéndice del recurso. El estimado de la reparación fue por la cantidad total de $950 de los cuales $150 eran por concepto de piezas y $800 por la labor. Una vez notificado el referido informe a las partes, éstas no presentaron objeciones al mismo, por lo que se dio por estipulado y admitido para todos los fines legales pertinentes.

La prueba testifical desfilada en la vista administrativa consistió del testimonio de la querellante-recurrida y del señor Suárez Montalvo, como representante de la parte querellada-recurrente, quien, a su vez, funge como Administrador del estacionamiento de la Cooperativa. Una vez escuchada y aquilatada la prueba, la agencia recurrida declaró con lugar la querella. Por consiguiente, ordenó a la parte querellada-recurrente a reembolsar y/o indemnizar dentro del término de 20 días a la parte querellante-recurrida la cantidad de $1,274.46 por concepto de daños ocasionados al vehículo ($950) e ingresos dejados de devengar y gastos incurridos ($324.46), y a abonar el interés legal correspondiente desde la fecha de notificación de la resolución.

Inconforme con dicha determinación, la Cooperativa acude ante nos mediante el presente recurso en el que alega que el D.A.C.O. incurrió en los siguientes errores:

"1. Es nula la Regla 7 del Reglamento de Áreas de Estacionamiento Público al establecer una responsabilidad absoluta por parte del operador de un estacionamiento hacia los usuarios del mismo, que es contraria a lo que dispone el Artículo 8 de la Ley 120 del 7 de junio de 1973, según enmendada.

2. Erró el D.A.C.O. al actuar con prejuicio y parcialidad en la apreciación de la prueba presentada, ya que ésta no fue suficiente para establecer una causa de acción a favor de la recurrida."

## II

El contrato de estacionamiento es uno de naturaleza atípica que, dependiendo de las circunstancias que lo rodean, puede calificarse de arrendamiento o depósito retribuido. *Rivera v. San Juan Racing Assoc., Inc.*, 90 D.P. R. 414, 418 (1964). La importancia de la distinción reside en que el arrendador sólo está obligado a entregar el espacio para estacionar en forma apropiada para su uso y a cuidar que se mantenga en el estado necesario para tal

uso, mientras que el depositario contrae la obligación de guardar el automóvil estacionado debiendo realizar para ello todos los actos positivos que sean necesarios para conservarlo y librarlo de peligros. *Id.*, a las págs. 420-421.

El Tribunal Supremo ha dicho que la responsabilidad del depositario en cuanto a la guarda y pérdida de la cosa no se rige por una norma concreta, sino que debe recurrirse a las disposiciones que regulan en forma general el cumplimiento de las obligaciones –Art. 1666 del Código Civil, 31 L.P.R.A. sec. 4661– y a las normas expuestas en los Arts. 1054-1057 de dicho código, 31 L.P.R.A. secs. 3018-3021. De esta manera, el depositario responde no sólo por dolo, sino también en casos de negligencia, esto es, la omisión de aquella diligencia convenida por las partes o en su defecto de la que correspondería a un buen padre de familia. Arts. 1047 y 1057 del Código Civil, *supra*, secs. 3011 y 3021, respectivamente. Véase, además, *Rivera v. San Juan Racing Assoc., Inc., supra*, a la pág. 421. "[E]l mero estacionamiento del vehículo dentro de la propiedad comprendida en la concesión exclusiva hace responsable al concesionario exclusivo por la destrucción, depreciación o uso indebido del vehículo de motor, objeto del contrato, hasta el monto del valor de dicho vehículo al momento de la entrega". *Dávila v. International Parking Co.*, 91 D.P.R. 203, 208 (1964).

Cuando la relación entre el dueño del vehículo y el empresario se califica como depósito, los tribunales han reconocido la existencia de una presunción de negligencia, una vez se establece que se verificó la entrega al depositario y que el vehículo se perdió o sufrió daños mientras se encontraba bajo el control del operador del área de estacionamiento. *Rivera v. San Juan Racing Assoc., Inc., supra*, a la pág. 421, n. 6; cf., 31 L.P.R.A. secs. 3192 y 4065; *Double AA Prop. Corp. v. E.L.A.*, 109 D.P.R. 235 (1979).

Recogiendo esta distinción, se creó la Ley Para Regular el Negocio de Áreas Para el Estacionamiento Público de Vehículos de Motor, Ley Núm. 120 del 7 de junio de 1973, 23 L.P.R.A. secs. 805 *et seq*. En la exposición de motivos de la referida ley, el legislador expresó el propósito de la misma:

"Debido al volumen de automóviles que diariamente entran y salen de las áreas de estacionamiento público, el alto valor que representa cada automóvil para su dueño, a los valores y otros objetos personales que sus dueños dejan en estos automóviles y a las distintas situaciones que surgen en dichas áreas de estacionamiento que ponen a diario en peligro dichas propiedades, cuyo valor es incalculable, hace que el servicio que prestan las áreas de estacionamiento público en Puerto Rico se considere un interés público.

Debido a las condiciones bajo las cuales operan en Puerto Rico los negocios de solares y locales para estacionamiento público de vehículos, es conveniente que en protección del interés público dichos negocios sean eficazmente reglamentados, no sólo en cuanto a las tarifas máximas que podrán cobrarse a los conductores que allí acuden, sino también en cuanto a las condiciones de seguridad y conveniencia para el público que deberán mantenerse y a prestación de las debidas garantías, mediante seguro o en cualquier otra forma adecuada, para el resarcimiento de los daños y perjuicios que se ocasionan a los usuarios, a sus vehículos y a las pertenencias en ellos dejadas.

Esta ley requiere que todo operador de un estacionamiento público obtenga la correspondiente licencia emitida por el Secretario del D.A.C.O., 23 L.P.R.A. sec. 808; mantenga un seguro de responsabilidad pública con una cubierta límite no menor de $10,000.00 para responder por daños a la propiedad, 23 L.P.R.A. sec. 809; y mantenga seguros que cubran los riesgos de hurto, fuego, explosión y colisión. 23 L.P.R.A. sec. 809."

Como puede observarse, un examen cuidadoso de la Ley Núm. 120 y de su exposición de motivos, refleja que el D.A.C.O. tiene jurisdicción primaria exclusiva para considerar las reclamaciones que surjan contra un operador de estacionamiento público cuando éstas se originan de los daños y perjuicios sufridos por el vehículo de un usuario. *Puerto Rico Parking Corp. v. ASERCO*, 103 D.P.R. 65, 67 (1974); *Aguilú Delgado v. Puerto Rico Parking System*, 122 D.P.R. 261 (1988).

La reclamación que pueda instar el usuario por daños a su vehículo surge de la relación contractual de depósito o de arrendamiento existente entre el usuario y el dueño del área de estacionamiento, que es de naturaleza patrimonial. *Id*; *P.R. American Ins. Co. v. Puerto Rico Parking System*, 108 D.P.R. 106 (1978); *Puerto Rico Parking Corp. v. ASERCO, supra.*

Específicamente, en *Flores v. Meyers Bros. of P.R., Inc.,* 101 D.P.R. 689, 699 (1973), se interpretó que el contrato de aparcamiento de vehículos de motor al amparo de la ley equivalente en aquel entonces a la Ley Núm. 120, *supra*, es un contrato común y corriente como lo es el de compraventa, permuta, arrendamiento, mandato y otros que menciona el Código Civil, en el que mediante el pago de una suma el usuario paga porque su automóvil quede estacionado y vigilado en vez de dejarlo en la calle sujeto a los riesgos de vandalismo y de hurto que hoy día existe.

La Ley Núm. 120, *supra,* establece la responsabilidad de los operadores de áreas de estacionamiento público, la cual divide en dos clases: las de ánimo directo de lucro y las de ánimo indirecto de lucro. A las primeras les aplica la presunción de que actúan como depositarios de los automóviles que se estacionan en sus locales, y por tanto, responden de los daños ocasionados a éstos hasta que se destruya la presunción de negligencia. *P. Ricancars, Inc. v. Plaza Las Américas,* 121 D.P.R. 238, 241 (1988); *Acevedo v. Plaza Las Américas, Inc.,* 109 D.P.R. 311, 314 (1980); *Rivera v. San Juan Racing Assoc., Inc., supra,* a la pág. 421. El Tribunal Supremo de Puerto Rico ha resuelto que en estos casos el operador viene obligado a responder por la pérdida, independientemente de que haya actuado de forma negligente o no. *Dávila v. International Parking Co., supra.* No obstante, cuando se trata de un estacionamiento con "ánimo indirecto de lucro", es necesario que el reclamante demuestre la existencia de responsabilidad por parte del operador. *Id.*

De otra parte, en conformidad con lo establecido en la Ley Núm. 120, *supra,* se promulgó el primer Reglamento de Áreas de Estacionamiento Público en el año 1998. Posteriormente, en el año 2004, éste fue derogado mediante la aprobación de un reglamento nuevo, igualmente denominado Reglamento de Áreas de Estacionamiento Público, Reglamento Núm. 6753 (en adelante, Reglamento). En lo que corresponde al caso ante nuestra consideración, la Regla 7 del mencionado reglamento, referente a la responsabilidad del operador y del usuario, dispone lo siguiente:

"A. El operador será responsable del hurto del vehículo, sus piezas y accesorios, así como de los daños que sufra. Los accesorios del vehículo comprenderán, entre otros, los instrumentos mecánicos para la reparación del vehículo, tales como gomas de repuesto y gato, los espejos, tapabocinas, "C/D players", radios, antenas, teléfonos celulares integrado, acondicionador de aire y otros análogos."

Reiteradamente ha señalado el Tribunal Supremo que en nuestra jurisdicción impera el principio que establece que las determinaciones administrativas son merecedoras de deferencia por parte de los tribunales. *Otero v. Toyota,* 163 D.P.R. 716 (2005). Dicha norma responde a que, por su conocimiento especializado, los foros administrativos, de ordinario, están en mejor posición que los tribunales para dictaminar sobre asuntos que manejan a diario. *Rivera Concepción v. ARPE,* 152 D.P.R. 116 (2000).

La revisión judicial de decisiones administrativas, de ordinario, se limita a evaluar si: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.C. v. Junta Reglamentadora de Telecomunicaciones,* 151 D.P.R. 269 (2000). Es decir, la revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias y asegurarse de que éstas desempeñen sus funciones conforme a derecho. *Miranda v. C.E.E.,* 141 D.P.R. 775, 786 (1996).

En cuanto a las determinaciones de hechos formuladas por la agencia, los tribunales no intervendrán con éstas, salvo que no estén sostenidas por la evidencia sustancial que surja del expediente administrativo

considerado en su totalidad. 3 L.P.R.A. sec. 2175. Véase, además, *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 75 (2000); *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387, 397-398 (1999); *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80-81 (1999).

En estos casos, el tribunal apelativo no debe realizar una adjudicación independiente de los hechos a base de sus propios criterios, sino que su función se limita a verificar si las determinaciones formuladas por la agencia efectivamente están sostenidas por la evidencia sustancial en el expediente administrativo. Si existe más de una interpretación razonable de los hechos, el Tribunal debe respetar la decisión de la agencia recurrida. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra,* a la pág. 75; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 437; *Hilton Hotels v. Junta Salario Mínimo,* 74 D.P.R. 670, 685-687 (1953).

Según lo ha definido la jurisprudencia, el concepto de evidencia sustancial se refiere a aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Ramírez Rivera v. Depto. de Salud,* 147 D.P.R. 901 (1999). Cuando la determinación de la agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales nos abstendremos de sustituir el criterio de la agencia por el judicial. El criterio rector en estos casos será la razonabilidad de la determinación de la agencia, luego de considerarse el expediente administrativo en su totalidad. *Otero v. Toyota, supra.*

Por ende, la parte que impugna judicialmente el dictamen de una agencia tiene el peso de demostrar, mediante la identificación de prueba en contrario que obre en el expediente, que la decisión no está basada en evidencia sustancial o que las conclusiones a las que llegó el foro administrativo son irrazonables. *Ramírez Rivera v. Depto. de Salud, supra.*

### III

En este caso, la recurrente alega en su primer señalamiento de error que la Regla 7 del Reglamento —contrario a lo dispuesto por la Ley Núm. 120, *supra*—, tiene el efecto de imponerle una responsabilidad de naturaleza absoluta al operador de un estacionamiento por las pérdidas sufridas por los usuarios.

Un análisis de la normativa legal aplicable, revela que el Reglamento promulgado por la agencia es consistente con la Ley Núm. 120, *supra,* la cual requiere que se considere al operador como un depositario del vehículo del usuario y, por consiguiente, responsable de los daños ocasionados a éste hasta que se destruya la presunción de negligencia. Ese el mismo objetivo que persigue la Regla 7 del Reglamento, que el operador del estacionamiento sea responsable ante el dueño del hurto de su vehículo, sus piezas y accesorios, así como de todos los daños que éste sufra. Ambas disposiciones legales no son contradictorias entre sí. Por el contrario, el Reglamento armoniza y complementa la Ley Núm. 20, *supra.* La responsabilidad que se impone al dueño u operador de un estacionamiento por el hurto de un vehículo, sus piezas y accesorios, es compatible con la responsabilidad que tiene un depositario de la cosa depositada, de cuidarla y guardarla como un buen padre de familia, para devolverla en igual estado físico.

En tiempos donde la propiedad, cuando no está adecuadamente protegida o supervisada, está expuesta a riesgos de vandalismo o hurto, se presume que un estacionamiento es un lugar seguro para dejar un vehículo de motor. Mediante el pago de una suma, el dueño del vehículo presume que su automóvil queda bajo una adecuada supervisión. Es responsabilidad del operador del estacionamiento velar por el vehículo que es dejado bajo su custodia. Si se determina que el operador del estacionamiento fue negligente por omisión en su deber de cuidar el objeto depositado, deberá resarcir al dueño para reparar el daño. Así lo entendió el D.A.C.O. y no tenemos motivos para intervenir con la interpretación efectuada por dicha agencia sobre su reglamento. En vista de que la misma resulta razonable, el tribunal debe abstenerse de intervenir. La alegación de nulidad de la Regla 7 del Reglamento planteada por el recurrente, no tiene fundamento alguno. Por lo tanto, concluimos que el primer señalamiento de error no se cometió.

Con relación al error manifiesto en cuanto a la apreciación de la prueba, hemos examinado el expediente y en el mismo obra prueba que sostiene la determinación del D.A.C.O. Recordemos que la determinación sobre la magnitud de los daños ocasionados al vehículo es una cuestión de hecho, por cuanto el foro recurrido estaba en mejor posición para hacer esta apreciación que este Tribunal.

De otra parte, la inconsistencia en cuanto a la fecha en que ocurrieron los hechos no tiene la importancia que le pretende atribuir la parte recurrente, si se toma en consideración que el día de los hechos el administrador del estacionamiento, señor Suárez Montalvo, se encontraba allí presente y pudo constatar por él mismo los daños ocasionados al automóvil de la parte querellante-recurrida. Además, que de los autos surge que la señora García radicó una querella ante la Policía. Como ha señalado la jurisprudencia, de ordinario, no existe un testimonio perfecto. Lo determinante aquí es que la agencia administrativa le adjudicó credibilidad a la testigo luego de verlo y oírlo declarar. Como mencionáramos, este Tribunal le debe gran deferencia a las determinaciones de hechos y la apreciación de la prueba que realizan las agencias recurridas. Ello, porque además de ser las especialistas son las que tienen la oportunidad de sopesar toda la prueba, principalmente la testifical.

Habiendo examinado el remedio concedido por el D.A.C.O., somos del criterio que el mismo fue apropiado y que las determinaciones de hechos realizadas por dicha agencia gubernamental están sostenidas por la evidencia sustancial obrante en el expediente administrativo; y siendo correctas sus conclusiones de derecho, concluimos que tampoco se cometió este error.

**IV**

Por los fundamentos anteriormente expuestos, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones