EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lind O. Merle Feliciano, en su capacidad oficial como Comisionado Electoral del Partido Popular Democrático<br><br>Apelante<br><br>v.<br><br>Hon. Juan E. Dávila Rivera en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones<br><br>Apelado<br><br>Norma Burgos Andújar, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista y María de Lourdes Santiago Negrón, en su capacidad Electoral del Partido Independentista Puertorriqueño | Apelación<br><br>2020 TSPR 38<br><br>204 DPR ____ |

Número del Caso:  AC-2019-104

Fecha: 14 de abril de 2020

Tribunal de Apelaciones:

    Panel Especial – Orden Administrativa TA-2019-153

Abogados de la parte peticionaria:

    Lcdo. Nelson J. Rodríguez Vargas
    Lcdo. Jorge Martínez Luciano
    Lcdo. Emil Rodríguez Escudero

Abogados de la parte recurrida:

    Lcda. Vickmary Sepúlveda Santiago
    Lcdo. Michael Rey
    Lcdo. Jason R. Caraballo Oquendo

**Partes Interventoras**

Abogado de la Comisionada Electoral
del Partido Nuevo Progresista,
Norma Burgos Andújar:

    Lcdo. Juan Guzmán Escobar

Abogados del Comisionado Electoral
del Partido Independentista Puertorriqueño,
Iván Aponte Berríos

    Lcdo. Adrián González Costa
    Lcdo. Luis E. Romero Nieves

Materia: Derecho Apelativo - El recurso apropiado para acudir al Tribunal de Apelaciones con el fin de impugnar una sentencia dictada en una controversia electoral es el de revisión y no el *certiorari*.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lind O. Merle Feliciano, en su capacidad oficial como Comisionado Electoral del Partido Popular Democrático<br><br>    Apelante<br><br>      v.<br><br>Hon. Juan E. Dávila Rivera en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones<br><br>    Apelado<br><br>Norma Burgos Andújar, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista y María de Lourdes Santiago Negrón, en su capacidad oficial como Comisionada Electoral del Partido Independentista Puertorriqueño | AC-2019-0104 | Apelación |

El Juez Asociado señor ESTRELLA MARTÍNEZ emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 14 de abril de 2020.

Ante la discrepancia entre el Código Electoral vigente y el Reglamento del Tribunal de Apelaciones, nos vemos forzados a aclarar cuál es el recurso disponible para acudir a tal foro apelativo con el fin de impugnar una sentencia dictada en una controversia electoral. En virtud de la supremacía de las leyes sobre los reglamentos, **pautamos que**

**el recurso para acudir al Tribunal de Apelaciones es el de revisión y no el <u>certiorari</u>**. De este modo, damos certeza al derecho vigente aplicable por existir incertidumbre tanto en la comunidad jurídica como en los distintos Paneles del Tribunal de Apelaciones.

A continuación, los hechos que originaron la controversia de derecho que hoy nos corresponde resolver.

## I.

El caso ante nuestra consideración tiene su génesis en la Comisión Local del Precinto 063 de Juana Díaz. En virtud de una orden de la Comisión Estatal de Elecciones (CEE), el 8 de marzo de 2019, los representantes de los tres (3) partidos políticos, a esa fecha inscritos, y la Presidenta de la Comisión Local se reunieron con el objetivo de actualizar las unidades electorales, entre otros asuntos. Sin embargo, no lograron consenso para consolidar varias de las unidades electorales propuestas. Ante ello, la Presidenta de la Comisión Local emitió una resolución mediante la cual denegó algunas de las consolidaciones solicitadas y permitió una de ellas. En específico, denegó la consolidación de la Unidad 4 con la Unidad 2; la Unidad 6 con la Unidad 9, y las Unidades 1,8 y 13 con la Unidad 3. Por otro lado, entendió que sólo procedía la consolidación de la Unidad 11 con la Unidad 7.

Insatisfechos, los tres (3) Comisionados Locales acudieron a la CEE para impugnar la determinación de la

Presidenta de la Comisión Local. Particularmente, los representantes del Partido Nuevo Progresista (PNP) y del Partido Independentista Puertorriqueño (PIP) impugnaron la denegación de las consolidaciones y, por su parte, el representante del Partido Popular Democrático (PPD) impugnó la única consolidación permitida.

Al no lograrse un consenso, el Presidente de la CEE, Hon. Juan E. Dávila Rivera, emitió la resolución CEE-RS-19-32, en la que validó todas las consolidaciones de las unidades electorales. Es decir, declaró con lugar las apelaciones presentadas por el PNP y el PIP, por lo que determinó que procedían las consolidaciones denegadas por la Presidenta de la Comisión Local. Por el contrario, denegó la apelación del PPD por entender que, en efecto, procedía la consolidación ya establecida por la Presidenta de la Comisión Local.

El Comisionado Electoral del PPD, Lcdo. Lind O. Merle Feliciano, presentó una moción de reconsideración. Al rechazarla, el Presidente de la CEE resaltó que los centros de votación que subsistirían, luego de las respectivas consolidaciones, contarían con los salones necesarios para recibir a los electores inscritos. Ello, a base del Informe del Departamento de Educación de salones académicos en las escuelas operacionales durante ese año escolar 2018-2019. A su vez, añadió que "ante la realidad económica y demográfica que experimenta Puerto Rico se hace necesario dar paso a la consolidación de las

Unidades Electorales". Véase, Apéndice del recurso, pág. 207.

Así las cosas, el Comisionado Electoral del PPD acudió al Tribunal de Primera Instancia. Este último ordenó la celebración de una vista evidenciaria. El mismo día de la vista, los Comisionados Electorales de los tres (3) partidos políticos antes mencionados, junto con el Presidente de la CEE, estipularon una serie de hechos y documentos relacionados a la controversia de las consolidaciones. Luego de escuchar las respectivas argumentaciones, el tribunal ordenó la presentación de sus escritos en el término de veinticuatro (24) horas.

Al evaluar las distintas posturas, el foro primario desestimó el recurso de revisión por no justificar la concesión de un remedio válido en derecho. A base de los criterios de razonabilidad y de deferencia, concluyó que la decisión del Presidente de la CEE fue razonable y no procedía revocarla.

Inconforme, el 21 de junio de 2019, el Comisionado Electoral del PPD presentó una <u>Petición de revisión judicial</u> ante el Tribunal de Apelaciones. En el mismo, señaló que el foro primario erró al confirmar "sumariamente el dictamen emitido por la CEE con respecto a la consolidación de unidades electorales en el Precinto 063 de Juana Díaz". En consecuencia, alegó que el foro primario erró al darle deferencia a la CEE, cuando procedía un <u>juicio de novo</u>.

Ahora bien, **el Tribunal de Apelaciones acogió el recurso de revisión judicial presentado por el PPD como un recurso de <u>certiorari</u>**. Ello, por entender que era el recurso **"adecuado para revisar una Sentencia dictada por el Tribunal de Primera Instancia en revisión de una determinación emitida por la Comisión Estatal de Elecciones"**. (Énfasis suplido). Véase, Apéndice del recurso, pág. 137. Así, ordenó a la Secretaría del Tribunal a reasignar la numeración alfanumérica del caso para que fuera acorde a un recurso de <u>certiorari</u>.

Acogido el recurso como un <u>certiorari</u>, el Tribunal de Apelaciones, mediante una resolución notificada el 12 de julio de 2019, denegó su expedición. Aun así, expresó que la vista evidenciaria celebrada por el Tribunal de Primera Instancia fue suficiente para que dicho foro pudiera disponer del asunto. Resaltó que el foro primario tuvo el beneficio de recibir prueba, escuchar las respectivas argumentaciones y contar con los escritos finales de las partes. Basado en ello, el Tribunal de Apelaciones concluyó que, en efecto, el Tribunal de Primera Instancia cumplió con la celebración de un <u>juicio de novo</u>. La parte aquí peticionaria presentó una moción de reconsideración, la cual fue denegada.

Así, aun en desacuerdo, el 31 de julio de 2019, el Comisionado Electoral del PPD acudió ante este Foro. Originalmente, el recurso fue presentado como una apelación, pero fue acogido como un <u>certiorari</u>. En su

recurso, plantea como primer error que el Tribunal de Apelaciones acogiera su recurso de revisión judicial como un recurso discrecional de certiorari. En sus restantes señalamientos de error, cuestiona que los procedimientos celebrados ante el Tribunal de Primera Instancia cumplieran con los criterios de un "juicio de novo". A ello, añade que el Tribunal de Apelaciones erró al validar el estándar de deferencia adoptado por el foro primario.

Posteriormente, emitimos una orden en la que solicitamos a las partes mostrar causa por la cual no debíamos revocar la Resolución dictada por el Tribunal de Apelaciones, pero, específicamente, ceñidos a ese primer señalamiento de error.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

El Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78-2011, 16 LPRA sec. 4001 et seq., se aprobó con el objetivo de asegurar la pureza en los procesos electorales, necesaria para el desarrollo de nuestra democracia, y, así, garantizar a cada ciudadano y ciudadana la misma oportunidad de participar en todas las fases del proceso. 16 LPRA sec. 4002. Ello, con el reconocimiento de que "[l]a grandeza y fortaleza de esta institución descansa principalmente en la expresión y

participación de los ciudadanos en los procesos electorales que dan vida a su operación y funcionamiento". Íd.

La Comisión Estatal de Elecciones (CEE) es el organismo responsable de planificar, organizar, estructurar, dirigir y supervisar todos los procedimientos de naturaleza electoral. 16 LPRA sec. 4012. Entre sus responsabilidades, se encuentra atender, investigar y resolver las controversias que se presenten ante su consideración. Íd.

La CEE está integrada por un Presidente y un Comisionado Electoral en representación de cada uno de los partidos políticos. 16 LPRA sec. 4011. Todo asunto de naturaleza electoral requerirá el acuerdo de la CEE y deberá ser aprobado por unanimidad de los Comisionados Electorales. 16 LPRA sec. 4014. En el escenario que no subsista tal unanimidad, el Presidente tomará la decisión final. Íd. "En estos casos la determinación del Presidente se considerará como la decisión de la Comisión y podrá apelarse en la forma provista en este subtítulo." Íd.

De este modo, esta ley especial delinea el tracto procesal para impugnar las decisiones de la CEE ante los tribunales de Puerto Rico. Según este andamiaje apelativo, las decisiones de la CEE pueden ser revisadas ante el Tribunal de Primera Instancia "mediante la presentación de un escrito de revisión". 16 LPRA sec.

4031. Allí el foro primario celebrará una vista en su fondo y recibirá evidencia acorde a un juicio de novo. Íd.; véase, Ríos Martínez, Com. Alt. PNP v. CLE, 196 DPR 289, 307 (2016).

A su vez, el Código Electoral provee para revisar la sentencia del foro primario ante el Tribunal de Apelaciones y el Tribunal Supremo. Específicamente, en lo pertinente, el estatuto dicta lo siguiente:

> Cualquier parte afectada por una decisión del Tribunal de Primera Instancia, podrá presentar **un recurso de revisión** fundamentado **ante el Tribunal de Apelaciones**, dentro de los diez (10) días siguientes a la notificación de la misma. El mismo término tendrá una parte afectada **para recurrir al Tribunal Supremo mediante un recurso de certiorari**. (Énfasis suplido). 16 LPRA sec. 4032.

Como se puede apreciar, el Código Electoral vigente establece una distinción expresa entre los recursos que se deben presentar ante el Tribunal de Apelaciones y el Tribunal Supremo. Así, el estatuto especifica que el recurso ante el tribunal apelativo intermedio es el de revisión y el recurso ante este Máximo Foro es el certiorari. **Por ende, es forzoso concluir que el recurso que debe presentarse ante el Tribunal de Apelaciones para revisar las sentencias dictadas por el foro primario en asuntos electorales es el de revisión y no el certiorari.**

### B.

Por su parte, la Ley de la Judicatura delimita la competencia del Tribunal de Apelaciones. 4 LPRA sec. 24y. En lo pertinente, dispone lo siguiente:

El Tribunal de Apelaciones conocerá de los siguientes asuntos:

(a) Mediante recurso de apelación de toda sentencia final dictada por el Tribunal de Primera Instancia.

(b) Mediante auto de <u>certiorari</u> expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia.

(c) Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. […]

[…]

(e) **Cualquier otro asunto determinado por ley especial**. (Énfasis suplido). Íd.

En particular, el Reglamento del Tribunal de Apelaciones tiene una subdivisión especial dirigida a las revisiones de casos originados en la CEE y particulariza el trámite apelativo correspondiente para estas acciones. 4 LPRA Ap. XXII-B, R. 41-53. Sin embargo, contrario a lo plasmado en el Código Electoral vigente, el Reglamento del Tribunal de Apelaciones dispone que el recurso para revisar las sentencias del Tribunal de Primera Instancia en revisión de las determinaciones que emita la CEE es el <u>certiorari</u>. 4 LPRA Ap. XXII-B, R. 41.

Lo anterior con la salvedad de que este Reglamento fue aprobado previo a la vigencia del actual Código Electoral, que ahora distingue expresamente entre el recurso de <u>certiorari</u> a presentarse ante el Tribunal Supremo y el recurso de revisión a presentarse ante el Tribunal de Apelaciones. La ley electoral anterior, vigente al momento de la aprobación del Reglamento del

Tribunal de Apelaciones, no establecía tal distinción de recursos. Véase, 16 LPRA sec. 3016b. A su vez, la Ley de la Judicatura de aquel entonces, acorde con la ausencia de tal distinción de recursos, disponía expresamente que el Tribunal de Apelaciones revisaría mediante certiorari estos asuntos electorales. 4 LPRA sec. 22k.

De este modo, resulta meridianamente claro que la ley electoral vigente al momento de la aprobación del Reglamento de Apelaciones y de la Ley de la Judicatura de 1994, supra, no es la misma que aplica en la actualidad. Es decir, el Reglamento del Tribunal de Apelaciones se aprobó bajo un estado de derecho distinto al que impera hoy. Asimismo, la ley electoral anterior no exponía expresamente la distinción entre el recurso de revisión al Tribunal de Apelaciones y el recurso de certiorari al Tribunal Supremo. Ello, distinto al Código electoral actual, que sí establece tal distinción.

## III.

Ciertamente, existe una discrepancia entre el esquema actual provisto por la Asamblea Legislativa y lo contenido en el Reglamento del Tribunal de Apelaciones. Discrepancia que amerita la interpretación e intervención de este Foro. Así, **resulta necesario aclarar que el recurso adecuado para revisar las sentencias del Tribunal de Primera Instancia en los asuntos que provienen de la CEE es el recurso de revisión**. Ello, según lo pauta el actual Código Electoral.

Como es sabido, en nuestro ordenamiento jurídico, las fuentes del derecho tienen una jerarquía. En tal orden jerárquico, las leyes tienen mayor fuerza legal que los reglamentos. Véase, Noriega v. Gobernador, 122 DPR 650, 680 (1988); Collazo Cartagena v. Hernández Colón, 103 DPR 870, 874 (1975). En consecuencia, de haber conflicto entre estas fuentes de derecho, se antepone el texto de la ley sobre el reglamento. Cónsono con tales postulados, los tribunales tenemos la responsabilidad de respetar la voluntad legislativa. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, Cap. 40, pág. 299. En el contexto del derecho electoral y los mecanismos de revisión de las determinaciones de las autoridades administrativas de esa materia no puede ser diferente. Por tanto, al resolver la presente controversia debemos atenernos, en primer lugar, a lo establecido en el Código Electoral vigente, supra.

En el caso de autos, ante la discrepancia entre el Código Electoral y el Reglamento del Tribunal de Apelaciones, prevalece lo codificado en la ley especial. Ello, a su vez, es conforme a la Ley de la Judicatura, supra, que condiciona o sujeta la competencia del Tribunal de Apelaciones a asuntos determinados por ley especial, como lo sería el Código Electoral.

Como mencionamos, el Código Electoral actual dispone expresamente que las sentencias del foro primario en

asuntos provenientes de la CEE se revisarán ante el Tribunal de Apelaciones mediante un "recurso de revisión". Ello, contrario a si la parte recurre al Tribunal Supremo, pues en ese caso el estatuto provee que sería mediante el auto de certiorari. Es decir, el estatuto distingue **expresamente** entre la naturaleza del recurso que se presenta ante el Tribunal de Apelaciones y aquel que se presenta ante el Tribunal Supremo. De este modo, los paneles del Tribunal de Apelaciones no pueden aplicar aisladamente su Reglamento, el cual todavía alude al recurso de certiorari para revisar los asuntos provenientes de la CEE, por ser contrario a lo dispuesto en la ley vigente.

Cónsono con lo aquí pautado, es menester destacar que tanto el Presidente de la CEE como el Comisionado Electoral del PIP, reconocen en sus respectivos alegatos que existe una incongruencia entre el Código Electoral y el Reglamento del Tribunal de Apelaciones. A su vez, reconocen que el derecho aplicable es lo dispuesto en el Código Electoral. Así pues, ambos coinciden en que el recurso para revisar las sentencias dictadas por el Tribunal de Primera Instancia en asuntos electorales lo es el recurso de revisión y no así el certiorari.

El trámite apelativo de asuntos provenientes de la CEE es uno sui generis porque se aleja de los trámites apelativos ordinarios tanto en los términos como en los procesos en sí. Asimismo, la CEE no es una agencia bajo

la Ley de Procedimiento Administrativo Uniforme. 3 LPRA sec. 9603. Debido a ello, el recurso de revisión para revisar las sentencias del Tribunal de Primera Instancia en asuntos relacionados a la CEE es uno en virtud de una ley especial.

Resulta particularmente importante en casos electorales la aclaración de la naturaleza del recurso a presentarse ante el Tribunal de Apelaciones. En el caso del _certiorari_, es un auto que puede ser expedido discrecionalmente por el tribunal intermedio. 4 LPRA sec. 24y. Así, ante un recurso de _certiorari_, el Tribunal de Apelaciones no viene obligado a atenderlo en los méritos, sino sólo en situaciones bajo el crisol de los criterios plasmados en la Regla 40 de su Reglamento, 4 LPRA Ap. XXII-B, R. 40. Mientras que el recurso de revisión que contempla el Código Electoral deja a un lado la discreción y requiere la intervención del Tribunal de Apelaciones en los méritos. Es decir, procederá a confirmar o revocar las decisiones del foro primario.

Ello es cónsono con el esquema legislativo que ordena al Tribunal de Primera Instancia celebrar un _juicio de novo_ en casos de esta naturaleza. Por tanto, las partes deben tener derecho a una revisión de las posibles determinaciones que haga el Tribunal de Primera Instancia. De lo contrario, si los recursos ante el Tribunal de Apelaciones fuesen discrecionales, habría el riesgo de que las partes pudieran quedarse sin una

revisión en los méritos. Con ello en mente, la Asamblea Legislativa contempló filtros de revisión judicial a fin de que se garantice que el dictamen del Tribunal de Primera Instancia pueda ser cuestionado ante el Tribunal de Apelaciones y eventualmente, de forma discrecional, ante el Tribunal Supremo.

No podemos perder de perspectiva la importancia que tienen los asuntos electorales en una sociedad democrática como la nuestra. De este modo, se debe garantizar la mayor de las observaciones con estas decisiones lo que incluye un sistema de revisión exhaustivo. Precisamente, dadas las circunstancias en que se dan las decisiones en la CEE, se justifica que en el escrutinio de las mismas la revisión judicial sea más abarcadora. PAC v. PIP, 169 DPR 775, 791 (2006). Ello, pues finalmente, a través de la revisión judicial, es que el tribunal cumple con el mandato constitucional de velar por la legalidad de las acciones de las diversas entidades gubernamentales. Ríos Martínez, Com. Alt. PNP v. CLE, supra, a la pág. 301.

A tenor con lo discutido, es necesario que el Reglamento del Tribunal de Apelaciones se atempere en toda su extensión a la legislación electoral actual. Esa misma que diáfanamente expone que el recurso que se debe presentar ante el Tribunal de Apelaciones es un recurso de revisión y no así un certiorari. La disparidad de decisiones entre los Paneles del Tribunal de Apelaciones

sobre el asunto requiere de nuestra parte una expresión para armonizar el derecho vigente y extenderle certeza a la comunidad jurídica.

Habida cuenta de lo anterior, corresponde devolver el caso de autos a la consideración del Tribunal de Apelaciones para que lo atienda en los méritos acorde con lo aquí pautado. Ello, a través del mecanismo de un recurso de revisión.

Finalmente, reiteramos que la Rama Judicial es un componente esencial en la preservación de los derechos individuales, en tiempos ordinarios y también en los extraordinarios. Ciertamente, uno de esos derechos individuales es el derecho al voto. La Rama Judicial ha anunciado públicamente su compromiso de mantener las operaciones para no desatender controversias de seguridad pública y casos que requieren urgencia, entre los que estén presentes el ejercicio de garantías constitucionales. Así lo han hecho responsablemente los jueces de primera instancia. No vemos razón alguna para que los jueces de las instancias apelativas no podamos continuar resolviendo casos urgentes, tal como lo hemos estado haciendo. Dilatar la resolución de esta controversia electoral contribuiría innecesariamente a añadir un obstáculo adicional a los múltiples que confrontan ya los componentes electorales. El proceso de colegiar para emitir esta Opinión se ha realizado totalmente por vía electrónica y también la certificación

de la misma no ha requerido alterar el plan de trabajo de emergencia previamente delineado.

**IV.**

Por las razones expuestas, se expide el recurso de <u>certiorari</u> y se revoca la resolución recurrida. Consecuentemente, se devuelve el caso al Tribunal de Apelaciones para que lo atienda urgentemente en los méritos.

Se dictará Sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lind O. Merle Feliciano, en su capacidad oficial como Comisionado Electoral del Partido Popular Democrático<br><br>Apelante<br><br>v.<br><br>Hon. Juan E. Dávila Rivera en su capacidad oficial como Presidente de la Comisión Estatal de Elecciones<br><br>Apelado<br><br>Norma Burgos Andújar, en su capacidad oficial como Comisionada Electoral del Partido Nuevo Progresista y María de Lourdes Santiago Negrón, en su capacidad oficial como Comisionada Electoral del Partido Independentista Puertorriqueño | AC-2019-0104 | Apelación |

SENTENCIA

En San Juan, Puerto Rico, a 14 de abril de 2020.

En virtud de lo que antecede, se expide el recurso de *certiorari* y se revoca la resolución recurrida. Consecuentemente, se devuelve el caso al Tribunal de Apelaciones para que urgentemente lo atienda en los méritos.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emite la siguiente expresión, a la cual se une la Juez Asociada señora Rodríguez Rodríguez:

"El Juez Asociado señor Colón Pérez, aun cuando pudiese concurrir con lo hoy resuelto, no

intervino en la causa de epígrafe por considerar que los asuntos aquí en controversia, a su juicio, no son una de las instancias de URGENCIA que - - en medio de la pandemia (COVID-19) que nos afecta como país - - este Tribunal estaba llamado a atender de forma expedita (acortando, con ello, los términos reglamentarios que tiene un juez o jueza para expresarse sobre el contenido y la corrección de la Opinión que hoy se certifica) y con prioridad sobre las demás casos que se encuentran en el trámite ordinario de este Foro, que pudiesen tener igual o mayor importancia que la ponencia que hoy emite esta Curia.

Sin lugar a dudas, para el Juez Asociado señor Colón Pérez el tratamiento de urgencia que hoy se le da a la causa de epígrafe es un lamentable proceder que, con mucha razón, pudiese crear confusión en la comunidad jurídica sobre que casos se consideran verdaderamente urgentes para esta Corte en medio de la crisis que hoy vive nuestro país; y que, ademas, pudiese afectar los derechos de reconsideración de las partes aquí involucradas, y de sus representantes legales, quienes no sabemos como se encuentran en estos momentos tan difíciles para nuestro Pueblo, y si tienen, o no, los medios y los recursos necesarios para hacer valer en tiempo sus derechos ante este Tribunal."

La Jueza Presidenta Oronoz Rodríguez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo